IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**
February 10, 2022 04:26 PM
ST-2020-CR-00320
TAMARA CHARLES
CLERK OF THE COURT



**IN THE SUPERIOR COURT THE VIRGIN ISLANDS**

**DIVISION OF ST. THOMAS AND ST. JOHN**

| | | |
|---|---|---|
| PEOPLE OF THE VIRGIN ISLANDS | ) | |
| | ) | **CASE NO. ST-20-CR-00320** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JARIUS PENN | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**2022 VI Super 17U**

¶1     THIS MATTER is before the Court on:

1. Defendant's Motion to Suppress, filed June 1, 2021;

2. The People's Opposition to the Defendant's Motion to Suppress, filed August 23, 2021; and

3. Defendant's Memorandum of Law in Support of Motion to Suppress, filed September 30, 2021.

¶2     Defendant Jarius Penn ("Penn") seeks to suppress physical evidence and statements elicited from him by police officers when he was arrested on October 27, 2020. Penn's Motion to Suppress came before the Court for hearing via Zoom on September 20, 2021. The People of the Virgin Islands ("the People") were represented by Assistant Attorney General H. Timothy Perry. Penn appeared and was represented by Assistant Public Defender Mary Ann Matney. Penn argues that on October 27, 2020, he was unlawfully seized by police who took evidence and elicited statements from him in violation of his Fourth, Fifth, and Sixth Amendment rights. The People argue that Penn was not seized for purposes of the Fourth Amendment when he discarded a firearm that was taken as evidence and that there was probable cause to arrest Penn. For the reasons set forth herein, the motion will be denied.

## I.     BACKGROUND AND PROCEDURAL POSTURE

¶3     On November 10, 2020, the People filed a five-count criminal information against Penn charging: (1) unauthorized possession of a firearm within one thousand feet of a school zone in violation of 14 V.I.C. § 2253(f); (2) unauthorized possession of a firearm with altered identification

POVI v. JARIUS PENN
ST-2020-CR-00320
MEMOANDUM OPINION AND ORDER
FEBRUARY 8, 2022
PAGE 2

2022 VI Super 17U

marks in violation of 23 V.I.C. § 481(b); (3) unauthorized possession of a firearm in violation of 14 V.I.C. § 2253(a); (4) unauthorized possession of ammunition in violation of 14 V.I.C. § 2256(a); and (5) loitering in violation of 14 V.I.C. § 1191(b)(7). The matter came before the Court for Arraignment on November 13, 2020, and Penn entered a plea of "not guilty."

¶4    At the suppression hearing on September 20, 2021, the People called one witness, Detective Gregory Bennerson of the Virgin Islands Police Department. Defendant's counsel examined the People's witness but did not call any witnesses. The People entered two exhibits into evidence: 1) a photograph of a sign reading, "ABSOLUTELY NO LOITERING IN THIS AREA"; and 2) a photograph of a firearm wrapped in black electrical tape that allegedly belongs to Penn.

¶5    Penn argues that the police officer's warrantless seizure of him on October 27, 2020, was an unconstitutional seizure under the Fourth Amendment of the United States Constitution and the Revised Organic Act of 1954. As such, Penn argues that the firearm that was taken as evidence during this seizure should be suppressed as fruit of an unconstitutional seizure. Penn also argues that the officer's questioning of him about whether he has a license to possess a firearm in the Virgin Islands constituted a custodial interrogation that elicited statements from him without a voluntary waiver of his rights against self-incrimination and rights to counsel under the Fifth and Sixth Amendments and the Revised Organic Act. The People argue that Det. Bennerson had probable cause to arrest Penn for the criminal offenses of loitering and use of a controlled substance in a public place. The People also argue that Penn was not seized under the Fourth Amendment when he discarded the firearm and thus had no longer reasonable expectation of privacy in the discarded firearm. The People concede, however, that Penn's *Miranda* rights were implicated when he was asked by officers if he had a license to possess a firearm in the Virgin Islands, so the People will not be using that statement in their case in chief.

## II.    FACTS

¶6    On October 27, 2020, Detective Gregory Bennerson and five other Virgin Islands Police officers[1] were conducting a crime initiative in Cruz Bay, St. John targeting high crime areas. While conducting the initiative, the officers observed several males sitting on the steps of a building near Plot No. 2A and 2B, Cruz Bay, in the vicinity of Woody's Seafood Saloon and approximately 100 feet from the Sprauve School. A "NO LOITERING" sign was posted on a pole next to the steps where the males were sitting. Det. Bennerson observed one of the males, later identified as the Defendant Jarius Penn, smoking what appeared to be a marijuana cigarette. Det. Bennerson could see the glow at the end of the cigarette and could smell a strong odor of marijuana. The officers exited their marked police patrol vehicles to investigate while wearing their uniforms that displayed the word "POLICE" on the front and back of their bulletproof vests. Det. Bennerson observed Penn look up at the officers as they approached, stand up and put on a red backpack, and

---

[1] The officers were identified in Det. Bennerson's Probable Cause Fact Sheet as Sargent Kirk Fieulleteau, Sargent Lorne Clark, and Police Officers Daryl Walcott, Jon Modeste, and Michael Jules.

2022 VI Super 17U

quickly walk away on Vester Gade Street. Det. Bennerson started to walk after Penn, and Penn took off running.

¶7     Det. Bennerson pursued Penn and shouted at him, "Police, stop running, get on the ground!" Penn continued to run and kicked off his black slippers so he could run faster, and Det. Bennerson continued to pursue him. Penn ran into a graveyard next to a beach, removed his backpack from his back, and started to discard items from inside the bag into the water. Det. Bennerson pointed his flashlight at Penn and saw a black object in his right hand that appeared to be a small firearm. Det. Bennerson observed Penn toss the object into the water and drop the backpack on the beach next to the water. Penn then took off running on the beach out of Det. Bennerson's sight.

¶8     Det. Bennerson continued to search for Penn on the beach and discovered him hiding among some roots by a mangrove tree approximately ten feet from where he threw the object into the water. Det. Bennerson ordered Penn to come out from the trees and he complied. Det. Bennerson placed handcuffs on Penn and turned him over to Sgt. Kirk Fieulleteau. Det. Bennerson then went back to the area where Penn dropped his backpack and discarded items into the water. He went into the water and used his flashlight to illuminate the area and search the water. He discovered a small black firearm with electrical tape wrapped around the handle grip and secured it for evidence.

¶9     Penn was transported to Jurgen Command Police Station in Cruz Bay, St. John, and was later transported to St. Thomas for booking at the Alexander Farrelly Criminal Justice Center Police Headquarters. Police Officer Elsworth Jones of the Virgin Islands Police Department's Firearms Unit conducted a "Firearms Check" to determine if Penn has a license to possess a firearm in the Virgin Islands. The absent entry in the report obtained from Officer Jones concluded that Penn does not have a license to carry a firearm. In an affidavit dated November 10, 2020, Det. Bennerson testified that Penn was asked if he had a license to possess a firearm in the territory of the United States Virgin Islands, and he responded, "no." Additionally, Forensic Detective Vernon Carr was unable to determine the make and model of the firearm at the time because it appeared to be covered in black spray paint. The firearm contained seven live rounds of ammunition. Penn was advised of his Miranda rights and remanded to the Alexander Farrelly Criminal Justice Center Bureau of Corrections pending his Advice of Rights hearing. Penn appeared for his Advice of Rights Hearing on October 28, 2020, and he was released from custody upon the execution of an Appearance Bond.

POVI v. JARIUS PENN
ST-2020-CR-00320
MEMOANDUM OPINION AND ORDER
FEBRUARY 8, 2022
PAGE 4

2022 VI Super 17U

## III. LEGAL STANDARD

### A. Motion to suppress physical evidence obtained through warrantless seizure of the defendant.

¶10    The Fourth Amendment of the United States Constitution and the Revised Organic Act of 1954 protect the people of the Virgin Islands from unreasonable searches and seizures.[2] The Fourth Amendment protection against unreasonable seizures has been long understood to include seizures of the person.[3] A seizure of the person occurs when a reasonable person, in view of all the circumstances surrounding the incident, would not feel free to leave.[4] The Supreme Court approved the exclusion of evidence as a sanction for violations of the Fourth Amendment in *Weeks v. United States*,[5] and the exclusionary rule was extended to the States in *Mapp v. Ohio*.[6] Under the exclusionary rule, the Court must suppress evidence found to be a product of a Fourth Amendment violation.[7] However, while the Fourth Amendment ensures an individual's rights to be secure from unreasonable search and seizures, it does not require a police officer to ignore a possible crime.[8] The Fourth Amendment allows officers to conduct limited searches and seizures upon the reasonable suspicion of criminal activity.[9] An individual's erratic behavior or obvious attempts to evade officers can support an officer's reasonable suspicion to make such investigatory stops.[10]

---

[2] U.S. Const. amend. IV (stating, in relevant part, "the right of the people to be secure…against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause…describing the place to be searched, and the persons or things to be seized"); *see also* V.I.C. Rev. Org. Act of 1954 § 3 ("The right to be secure against unreasonable searches and seizures shall not be violated"); *see also People of the Virgin Islands v. Armstrong*, 64 V.I. 528, 530 n.1 (V.I. 2016) (stating that the Fourth Amendment of the United States Constitution applies to the Virgin Islands).

[3] *California v. Hodari D.*, 499 U.S. 621, 624 (1991) (citing *Henry v. United States*, 361 U.S. 98, 100 (1959)); *see also Blyden v. People of the Virgin Islands*, 53 V.I. 637, 647 (V.I. 2010) (quoting *Brown v. Texas*, 443 U.S. 47, 50 (1979)) (finding that "the Fourth Amendment 'applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest'").

[4] *See Hodari D.*, 499 U.S. at 628; *see also United States v. Drayton*, 536 U.S. 194, 201 (2002) (finding that "if a reasonable person would feel free to terminate the encounter, then he or she has not been seized"); *see also Blyden*, 53 V.I. at 647 (determining that "whenever a police officer accosts an individual and restrains his freedom to walk away, he has seized that person…").

[5] 232 U.S. 383 (1914).

[6] 367 U.S. 643 (1961).

[7] *See id.* at 648.

[8] *See United States v. Chabot*, 19 V.I. 28, 35 (D.V.I. 1982) (finding that the Fourth Amendment does not require police officers "simply to shrug their shoulders and allow a crime to occur…").

[9] *See Blyden v. People of the Virgin Islands*, 53 V.I. 637, 647-48 (V.I. 2010) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)) (allowing a limited search and seizure without a warrant or probable cause "where a police officer observes unusual conduct which leads him to reasonably conclude in light of his experience that criminal activity may be afoot…").

[10] *See United States v. Brignoni-Ponce*, 422 U.S. 873, 885 (1975); *see also Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).

POVI v. JARIUS PENN
ST-2020-CR-00320
MEMOANDUM OPINION AND ORDER
FEBRUARY 8, 2022
PAGE 5

2022 VI Super 17U

¶11    An arrest is considered "the quintessential seizure of the person" for purposes of the Fourth Amendment.[11] However, for an arrest to constitute a seizure, there must be either the application of physical force upon the defendant or, where that is absent, a submission to an officer's assertion of authority to restrain the subject's liberty.[12] A police pursuit of a fleeing suspect is not an arrest and not a seizure under the Fourth Amendment, and evidence a suspect discards during such pursuit is therefore not subject to exclusion at trial as the fruit of a Fourth Amendment seizure.[13]

¶12    On a motion to suppress, the burden of proof is ordinarily on the defendant who seeks to suppress evidence.[14] However, once it has been established that a search or seizure was conducted without a warrant, the burden shifts to the government to show that the search or seizure was reasonable.[15] Warrantless searches and seizures are "*per se* unreasonable absent a few 'well-delineated exceptions.'"[16] The test for "reasonableness" is an objective inquiry analyzed by examining the totality of the circumstances surrounding the search or seizure.[17] Virgin Islands Courts have determined that the scent of marijuana alone "may be sufficient to establish reasonable suspicion or even 'probable cause' to conduct further investigation into possible criminal acts or evidence of contraband" without a warrant.[18] If a search or seizure is found to be unreasonable, then evidence obtained through such searches and seizures is excluded in criminal prosecutions.[19]

IV.    ANALYSIS

A. **The physical evidence that Penn seeks to suppress was not taken in violation of his Fourth Amendment rights.**

1. **Penn was not seized for purposes of the Fourth Amendment when he discarded the firearm.**

¶13    Penn argues that on October 27, 2020, when he walked away from the area where police were approaching and police officers chased after him, the officers engaged in a warrantless chase and seizure of him. As such, Penn argues that the evidence taken from this chase and seizure should

---

[11] *See Hodari D.,* 499 U.S. at 624.

[12] *See id.* at 626.

[13] *See id.* at 629 (concluding that cocaine that a defendant abandoned while he was running from the police was not the fruit of a seizure because the defendant was not seized at the time he discarded the cocaine).

[14] *People of the Virgin Islands v. Prentice,* 64 V.I. 79, 89 (V.I. Super. Ct. 2016) (citing *United States v. Johnson,* 63 F.3d 242, 245 3d Cir. 1995)).

[15] *Id.*

[16] *People of the Virgin Islands v. Pemberton,* 71 V.I. ,259 (V.I. Super. Ct. 2019) (citing *Browne v. People of the Virgin Islands,* 56 V.I. 207, 217 (V.I. 2012)) (quoting *Katz v. United States,* 389 U.S. 347, 357 (1967)).

[17] *Prentice,* 64 V.I. at 89 (citing *United States v. Montoya de Hernandez,* 473 U.S. 531, 537 (1985)).

[18] *People of the Virgin Islands v. Looby,* 68 V.I. 683, 698 (V.I. 2018) (citing *United States v. Ramos,* 443 F.3d 304, 308 (3d Cir. 2006)) (concluding that although decriminalized, possession of marijuana remains unlawful in the Virgin Islands and is considered contraband); *see also People of the Virgin Islands v. Cannergeiter,* 65 V.I. 114, 128 (V.I. Super. Ct. 2016) (determining that the decriminalization of small amounts of marijuana does not prohibit officers from stopping a vehicle based on the detection of the smell of marijuana).

[19] *See Prentice,* 64 V.I. at 89 (citing *Mapp v. Ohio,* 367 U.S. 643, 654-57 (1961)).

POVI v. JARIUS PENN
ST-2020-CR-00320
MEMOANDUM OPINION AND ORDER
FEBRUARY 8, 2022
PAGE 6

2022 VI Super 17U

be excluded as fruit of an unreasonable seizure. The evidence Penn seeks to exclude is the firearm he discarded in the water while fleeing from the police. At issue is whether Penn had been seized for purposes of the Fourth Amendment when he discarded the firearm. The Court finds that Penn was not seized at the time he discarded the firearm in the water and therefore the firearm is not fruit of an unconstitutional seizure that warrants exclusion.

¶14    This case is similar to *California v. Hodari D.*[20] which established that a Fourth Amendment seizure requires an application of physical force or a submission to an officer's assertion of authority.[21] Like the defendant in *Hodari D.*, Penn seeks to suppress evidence that he discarded while he was fleeing from a pursuing police officer. As the Supreme Court made clear in *Hodari D.*, a suspect fleeing from police pursuit has not been seized under the Fourth Amendment because there has been no application of physical force and no submission to an officer's authority.[22] At the time that Penn discarded the firearm, he had not yet been arrested; he had not been physically touched by any officers nor had he submitted to any officer's show of authority to restrain his liberty. He was therefore not seized under the Fourth Amendment at the time that he discarded the firearm. Because any evidence a suspect discards while fleeing a police officer is not subject to exclusion at trial as fruit of a Fourth Amendment seizure, the firearm Penn seeks to suppress is not subject to exclusion as fruit of an unconstitutional seizure.[23]

### 2. Police officers had probable cause to arrest Penn.

¶15    Although the Court finds that Penn was not seized for purposes of the Fourth Amendment at the time he discarded the evidence he seeks to suppress, the Court also finds that the People have satisfied their burden of proving that probable cause existed to arrest Penn, and the warrantless arrest of Penn was therefore reasonable. Through the testimony of Detective Bennerson, the People established that the officers who approached and eventually chased and arrested Penn had probable cause to search for evidence of contraband of criminal activity based on the smell of marijuana and the officer's observation of Penn smoking what appeared to be a marijuana cigarette. As courts in the Virgin Islands have confirmed, the smell of marijuana alone can be enough for an officer to establish probable cause to further investigate for evidence of criminal activity.[24] Det. Bennerson both smelled marijuana and observed Penn smoking what appeared to be a marijuana cigarette, which is enough to establish the probable cause needed to effectuate an arrest. With this testimony, the People have established that probable cause existed to further investigate and arrest Penn.

---

[20] 499 U.S. 621 (1991).

[21] *See Hodari D.*, 499 U.S. at 626.

[22] *See id.*

[23] *See id.*

[24] *People of the Virgin Islands v. Looby*, 68 V.I. 683, 698 (V.I. 2018) (citing *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006)) (concluding that although decriminalized, possession of marijuana remains unlawful in the Virgin Islands and is considered contraband); *see also People of the Virgin Islands v. Cannergeiter*, 65 V.I. 114, 128 (V.I. Super. Ct. 2016) (determining that the decriminalization of small amounts of marijuana does not prohibit officers from stopping a vehicle based on the detection of the smell of marijuana).

POVI v. JARIUS PENN
ST-2020-CR-00320
MEMOANDUM OPINION AND ORDER
FEBRUARY 8, 2022
PAGE 7

2022 VI Super 17U

¶16 Additionally, the People have demonstrated that the officers who approached, chased, and arrested Penn had reasonable suspicion to investigate him for criminal activity. As Det. Bennerson testified, when he and other officers approached Penn, Penn stood up and quickly walked away. When officers pursued him, he began to run and continued to flee when they told him to stop. The Supreme Court has indicated that flight upon sighting a police officer is not *per se* indicative that criminal activity is afoot, but the Court has recognized that nervous and erratic behavior is a pertinent factor in determining whether there is reasonable suspicion to conduct an investigatory stop.[25] Unprovoked flight from a crime scene may be considered a factor in deciding whether reasonable suspicion exists.[26] Here, Penn's flight from the officers provided them with reasonable suspicion to suspect criminal activity, and thus their actions were reasonable under the Fourth Amendment.

### B. Penn's *Miranda* rights under the Fifth and Sixth Amendments were implicated by his statement to officers regarding whether he had a license to possess a firearm in the Virgin Islands.

¶17 Penn seeks to suppress his statement to police officers regarding whether he was licensed to possess a firearm. Penn argues that the police officer's questioning that elicited this statement constituted a custodial interrogation without a voluntary waiver by Penn of his rights against self-incrimination and his right to counsel under the Fifth and Sixth Amendments. The People concede that the questioning was custodial in nature which would have required Penn be read his *Miranda* rights. Since Penn was not *Mirandized*, the People will not seek to introduce his statement in their case in chief. Therefore, the Court does not need to determine whether Penn's statement should be suppressed.

## V. CONCLUSION

¶16 Although the Fourth Amendment ensures an individual's rights to be secure from unreasonable search and seizures, it does not require a police officer to ignore a possible crime.[27] The Court finds that Penn was not seized for purposes of the Fourth Amendment when he discarded the physical evidence he seeks to suppress. He had not been physically seized nor had he submitted to an officer's show of authority when he discarded a firearm while fleeing from the police. Additionally, the Court finds that the People have satisfied their burden of proving that the warrantless arrest of Penn was reasonable under the Fourth Amendment because the police had probable cause to arrest Penn for smoking marijuana. The police also had reasonable suspicion to investigate Penn for criminal activity based on his behavior. The evidence that Penn seeks to suppress is therefore not the fruit of an unconstitutional seizure and will not be suppressed. However, the People concede that Penn's *Miranda* rights were implicated by his statement to

---

[25] *See United States v. Brignoni-Ponce*, 422 U.S. 873, 885 (1975).

[26] *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).

[27] *See United States v. Chabot*, 19 V.I. 28, 35 (D.V.I. 1982).

2022 VI Super 17U

officers that he did not have a license to possess a firearm in the Virgin Islands. The People have stipulated that they will not be using this statement against Penn in their case in chief, so the Court therefore does not need to rule on the issue of suppressing Penn's statements.

¶17     Accordingly, it is hereby

    **ORDERED** that Defendant's Motion to Suppress is **DENIED**; and it is further

    **ORDERED** that a copy of this Memorandum Opinion and Order shall be directed to counsel of record.

DATED: February 10, 2022

_____
HON. SIGRID M. TEJO
Judge of the Superior Court of the Virgin Islands

**ATTEST:**

**TAMARA CHARLES**
Clerk of the Court ___ / ___ / ___

By: _____
for LATOYA A. CAMACHO
    Court Clerk Supervisor  2 / 10 / 2022